. MONROE, Judge.
The State appeals from an order granting an oil and gas severance tax refund to Union Oil Company. The procedural history of this case is quite lengthy; however, a statement of that history is necessary for an understanding of the issues presented for review.
In September 1991, Unocal Exploration Corporation, now the Union Oil Company of California (“Union Oil”), filed a petition with the State Oil and Gas Board of Alabama (“Board”), requesting an order certifying its enhanced recovery project in the Chunehula Field of Mobile County as a qualified project under § 40-20-2(a)(2), Ala.Code 1975. The petition also requested that the Board quantify projected oil and gas production amounts to be applied under this section. Union Oil amended its petition in January 1992 to request identical relief for its supplemental enhanced recovery project, which involved expansions to the original enhanced recovery project that were implemented after January 1, 1985. Section 40-20-2(a)(2) provides as follows:
“Effective May 1, 1985, and thereafter, the incremental oil or gas production produced during a given year resulting from a qualified enhanced recovery project shall be taxed at the rate of four percent of gross value at the point of production of said incremental oil or gas production. The State Oil and Gas Board of Alabama shall approve the qualified enhanced recovery project and the determination of the projected annual oil or gas production that could have otherwise been produced without the benefit of the initiation of said qualified enhanced recovery project at a hearing held pursuant to Section 9-17-7, as amended, and shall notify the Alabama Department of Revenue thereof.”
Thus, under this section, the amount of oil or gas produced through a qualified enhanced recovery project that is in excess of the amount that could have been produced without the implementation of such project, i.e., the “incremental oil or gas production” is taxed at a rate of four percent rather than at a rate of eight percent. See §§ 40-20-1(21), 40-20-2(a)(2), Ala.Code 1975. The amount of oil or gas production that could have been produced without the qualified enhanced recovery project continues to be taxed at the higher rate of eight percent. Union Oil apparently filed its petitions in order to qualify for the lower tax rate.
On March 30, 1992, after conducting two hearings, the Board denied Union Oil’s petition as to the original qualified enhanced recovery project, but did not rule as to the supplemental enhanced recovery project initiated after January 1, 1985. In fact, in its order, the Board stated that Union Oil was probably entitled to have its petition granted as to the supplemental project. However, the Board refused to rule on the supplemental project and instead, on April 15, 1992, allowed Union Oil to present substantial evidence in support of its position. On May 29, 1992, the Board still refused to rule on the supplemental project and continued the proceedings indefinitely, pending the outcome of Union Oil’s appeal of the Board’s decision regarding the original project.
Union Oil appealed from the Board’s order regarding its refusal to rule on the supplemental project, and demanded a trial de novo in the circuit court. In an order dated February 18, 1993, the circuit court determined that the Alabama Administrative Procedures Act (“AAPA”) governed and that Union Oil was entitled to a trial de novo. Apparently, *286 Union Oil and the Board then began negotiations and it was agreed that Union Oil’s supplemental enhanced recovery project qualified under § 40-20-2, Ala.Code 1975. A special master was appointed by the circuit court to quantify the production numbers eligible for the lower tax under § 40-20-2.
In an order dated August 16, 1994, the circuit court ruled that Union Oil’s supplemental enhanced recovery project was a qualified project under § 40-20-2(a)(2). The court further ordered that the report of the special master was approved and that the Board had 10 days in which to certify and approve Union Oil's supplemental enhanced recovery project and the projected annual amount of oil and gas that would otherwise have been produced, as set out by the report of the special master. On August 24, 1994, the Board entered an order certifying Union Oil’s supplemental enhanced recovery project as a qualified project under § 40-20-2. The order also certified the amounts of projected annual oil and gas production that otherwise could have been produced without the supplemental project. A listing of these amounts was attached as an exhibit to the order and was explicitly incorporated into the order by reference. It is undisputed that the incorporated exhibit lists the projected amounts of oil and gas production for the period commencing May 29, 1992, which was the date the Board refused to rule on the supplemental project.
Union Oil had continued paying the full tax rate of eight percent on all oil and gas produced during the course of the litigation. So, on November 2, 1994, Union Oil filed a petition for a refund of the excess taxes it had paid since May 29, 1992. This petition was filed in accordance with § 40-2A-7(c), which provides in pertinent part as follows:
“(1) Any taxpayer may file a petition for refund with the department for any overpayment of tax or other amount erroneously paid to the department or concerning any refund which the department is required to administer.”
§ 40-2A-7(l), Ala.Code 1975. This section also provides that taxpayers have three years from the date the return was filed to petition for a refund. § 40-2A-7(c)(2)(a).
The State Department of Revenue (“State”) denied Union Oil’s petition, and Union Oil appealed to the circuit court. After conducting a hearing, the court ruled that Union Oil was entitled to a refund for the oil and gas severance and production taxes it overpaid from May 29, 1992, through August 31, 1994, plus interest. The State appeals.
The evidence presented to the court below consisted of stipulated documents, records, and other stipulated facts. No ore tenus testimony was presented. Because the court’s decision was based on stipulated facts, the court decided a question of law that is not afforded a presumption of correctness on appeal. Ike v. Board of School Comm’rs of Mobile County, 601 So.2d 1014, 1016 (Ala. Civ.App.1992); see also Craig Constr. Co. v. Hendrix, 568 So.2d 752 (Ala.1990) (when facts before trial court are undisputed, appellate court will determine whether trial court misapplied law to the facts).
The State argues that Union Oil is not entitled to the refund on the ground that Union Oil was not eligible for the lower tax rate until August 24, 1994, the date of the Board’s order certifying the project and approving the production numbers. In addition, the State argues that the Board’s order does not specify that it applies retroactively and that the trial court was without authority to construe it as such. Furthermore, the State contends that the Board’s order is ambiguous as to the starting date for the tax benefit, and that this ambiguity should be construed against Union Oil.
Union Oil contends that it is entitled to the refund because, it says, the Board’s order clearly certifies the production amounts commencing on May 29, 1992. Union Oil argues that the order is not ambiguous in this respect. Union Oil further argues that the State misuses the term “retroactive.” According to Union Oil, it is not asking that the order be retroactively applied.
As noted above, the exhibit showing the projected amount of oil and gas produced was attached to and incorporated into the Board’s order. Regarding the exhibit, the Board stated in part as follows:
*287 “The projected annual oil or gas production for the Chunchula Field Unit as set forth in Exhibit ‘C’ that could have otherwise been produced without the benefit of the initiation of the supplemental enhanced recovery project described above is accurate and correct, and the Alabama Department of Revenue should be notified thereof.”
(Emphasis added.)
We disagree with the State’s argument that the Board’s order is ambiguous as to the starting date for Union Oil’s eligibility for the four percent tax' rate. In its order, the Board clearly certified the oil and gas production amounts commencing on May 29, 1992, and notified the State of these amounts. Both parties to this appeal admit that attorneys for the Board and for Union Oil drafted the Board’s order. If they had intended for Union Oil to be entitled to the four percent tax as of the date of the order, which was August 24, 1994, then they would have had no reason to include in the order the projected oil and gas production amounts for the years 1992 and 1993. By entering the order, the Board was certifying that Union Oil was eligible for the lower rate beginning in May 1992.
The State also argues that there is no authority for the tax to be applied retroactively, as it asserts the court has ordered in this case. The State bases its argument on § 40-20-2, which does not explicitly allow retroactive certification of oil and gas production amounts. We agree with Union Oil that the Board’s order does not constitute a retroactive certification of the oil and gas production amounts. The statute allowing the preferential treatment for oil and gas production amounts certified by the Board was effective in 1985. § 40-20-2(a)(2), Ala.Code 1975. The supplemental project was implemented by Union Oil prior to the filing of its petition in 1991. The purpose of its litigation with the Board was to determine whether its supplemental project was qualified under § 40-20-2, Ala.Code 1975. Once it was determined that the project was qualified, the litigation continued for the purpose of determining the amounts of oil production to be certified for special tax treatment under § 40-20-2. The end result of the entire procedure was that the Board qualified the supplemental project and certified the oil and gas production amounts eligible under § 40-20-2. The Board certified the amounts beginning in May 1992. This was not a retroactive order. This was an order determining that the oil and gas produced during the pendency of the litigation process was qualified for preferred tax treatment under § 40-20-2(a)(2), Ala. Code 1975. Contrary to the State’s contention, § 40-20-2(a)(2) does not prohibit such an order.
In fact, as Union Oil notes, § 40-20-2(a)(2) was passed on September 24, 1985. Ala.Act No. 85-911. However, that section states that the four percent tax rate shall be “[e]f~ feetive May 1, 1985 and thereafter.” Thus, by its own language the statute allowed the Board to certify oil and gas production amounts that were produced before the act was approved.
In sum, the Board certified Union Oil’s gas and oil production amounts from May 1992 through the expected duration of the project. It is in our opinion irrelevant in this instance that the order certifying the production amount was not entered until August 1994. Union Oil has met all of the requirements established in § 40-20-2 and is thus entitled to a four percent tax on its incremental oil and gas production beginning in May 1992. Because Union Oil paid the eight percent tax from May 1992 until the entry of the Board’s order, it is due a refund in the amount of taxes overpaid from May 1992 until August 1994. Therefore, the order of the trial court is affirmed.
Although we have decided this case on other grounds, we would note another compelling argument made by Union Oil. That is, under the AAPA, the State, as an interested party, could have appealed from the Board’s 1994 order. § 41-22-20, Ala.Code 1975. It seems to us that the State Department of Revenue cannot now choose to dishonor the decision of another state agency.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and CRAWLEY, JJ., concur.